UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MABEL CLAIRE MCCALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-1747-B |
| | § | |
| GENENTECH, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Motion to Remand (doc. 11), filed October 2, 2010, and Defendants' Unopposed Motion for Leave to File Sur-Reply (doc. 23), filed November 19, 2010. For the reasons stated below, the Court finds that both Motions should be and hereby are **DENIED**.

## I.

## BACKGROUND

This action arises out of Plaintiff Mabel Claire McCall's use of the prescription drug Raptiva to treat her plaque psoriasis between September 2006 and August 2008. (Pl.'s Orig. Pet. 5). Plaintiff alleges that Defendant Dr. Alan Menter originally prescribed Raptiva for her in September 2006 (*Id.* at 5). After self-injecting the drug weekly for twenty-three months, Plaintiff began to experience headaches, fever, chills, low back pain, nausea, and vomiting. (*Id.* at 2, 5). Plaintiff sought treatment at a local emergency room on August 8, 2008, where she was eventually diagnosed with encephalitis. (*Id.* at 5-6). While in the hospital, Plaintiff was subjected to several invasive medical procedures, including multiple spinal taps and a tracheostomy. (*Id.* at 6). She remained in the

hospital for twenty-five days. (*Id.*). To this day, Plaintiff maintains that she suffers from cognitive and communication issues, short term memory loss, tremors, fatigue, anxiety, depression, pain, and sleep apnea. (*Id.* at 7). Plaintiff also must wear bilateral leg braces and walk with a cane, as she is prone to fall without them. (*Id.*).

Defendant Genentech was the primary designer, manufacturer, tester, and supplier of Raptiva. (*Id.* at 1). Defendant XOMA aided in the research, development, and testing of Raptiva. (*Id.* at 2). Together, Defendants Genentech and XOMA are hereinafter referred to as the Manufacturing Defendants. The three other defendants are hereinafter labeled the Non-Manufacturing Defendants. The first Non-Manufacturing Defendant, Dr. Alan Menter, was a clinical researcher of Raptiva who conducted clinical trials of the drug prior to its approval by the Food and Drug Administration ("FDA"). (*Id.* at 7). Dr. Menter also advocated the safety and effectiveness of Raptiva before an FDA Advisory Committee Meeting determining whether to approve the drug. (*Id.* at 8). While Dr. Menter initially prescribed Raptiva for Plaintiff, her Original Petition expressly disclaims any cause of action based upon Dr. Menter's role as a treating physician. (*Id.* at 3, 5 ("This is not an action related to 'health care' or a physician-patient relationship pursuant to [TEX. CIV. PRAC. & REM. CODE §] 74.001 et seq., Texas Medical Liability and Improvement Act.")). Dr. Menter practiced out of Defendant Texas Dermatology Associates and was also the Director of Psoriasis Research at Defendant Baylor Research Institute. (*Id.* at 2). These two business entities also conducted studies of Raptiva and provided sub-investigators for the research. (*Id.* at 8). Plaintiff alleges that the studies of the Non-Manufacturing Defendants were "integral" to the launch of Raptiva. (*Id.* at 7-8).

Plaintiff filed her Original Petition in state court on August 4, 2010 (doc. 1, 22-38).

Defendants Genentech and XOMA answered on August 30, 2010 (doc. 1, 44-60). Genentech and XOMA (with the Non-Manufacturing Defendants' consent) subsequently removed the case on the basis of diversity jurisdiction to this Court on September 3, 2010 (doc. 1), alleging that Plaintiff had improperly joined the Non-Manufacturing Defendants. (Notice of Removal 3-8). The Non-Manufacturing Defendants timely filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Procedure (doc. 9), alleging that Plaintiff has failed to state a claim upon which this Court might grant relief as to any of her claims against them. Thirty days later, Plaintiff filed the instant Motion to Remand (doc. 11), arguing that this Court did not have jurisdiction to hear this suit because the Non-Manufacturing Defendants and Plaintiff are not diverse in citizenship.

After Defendants responded to Plaintiff's Motion to Dismiss (doc. 13), Plaintiff sought leave to amend her complaint to include additional factual allegations concerning the Non-Manufacturing Defendants (doc. 21).[1] The Court has yet to Rule on this Motion or the Motion to Dismiss and will do so in a separate order. For purposes of the Motion to Remand, however, the Court notes that it is precluded from considering any pleading other than Plaintiff's Original Petition, as it was Plaintiff's pleading at the time of removal. *See Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). Plaintiff filed her Reply in support of her Motion to Remand on November 15th (doc. 22), citing her Ameded Complaint. In light of the Reply's reliance on Plaintiff's Amended Complaint, Defendants sought leave to file a sur-reply (doc. 23) to address the new allegations and arguments raised in Plaintiff's Reply, to which Plaintiff is unopposed. However, because the Court may only consider the Original Petition for purposes of the Motion to Remand, there is no need for

---

[1]Plaintiff first improperly filed her Amended Complaint (doc. 19) without seeking leave of Court. The Court struck this filing because of its non-compliance with the Local Rules (doc. 20).

consideration of the Sur-Reply, and accordingly Defendants' Unopposed Motion for Leave to File Sur-Reply is **DENIED as moot**. The Motion to Remand now being ripe, the Court turns to the merits of its decision.

## II.

## LEGAL STANDARD

*A.     Removal*

A defendant may remove an action filed in state court to federal court if the case could have originally been filed in federal court. 28 U.S.C. § 1441(a). Federal subject matter jurisdiction is limited; federal courts may entertain only those cases involving a question of federal law or those where parties are of diverse citizenship. *See* 28 U.S.C. §§ 1331-1332. In diversity cases, the citizenship of each plaintiff must be diverse from the citizenship of each defendant, and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332. Accordingly, a defendant that removes a case based on diversity "must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc).

*B.     Improper Joinder*

Notably, Federal diversity jurisdiction cannot be defeated by an improperly joined, non-diverse defendant.[2] *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009). The party seeking removal bears the burden of proving that the joinder of the non-diverse party was improper. *Id.* at

---

[2]The Fifth Circuit adopts the term 'improper joinder' as "being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past." *Smallwood*, 385 F.3d at 571 n.1.

574. "[A]ll contested factual issues and ambiguities of state law [are resolved] in favor of the plaintiff." *Gasch*, 491 F.3d at 281 (internal citations omitted). A party may establish improper joinder by showing either that the plaintiff has used fraudulent facts to plead jurisdiction or that she has not established a cause of action against the non-diverse defendant. *Smallwood*, 385 F.3d at 573. In the instant case, there is no allegation that Plaintiff has used fraudulent facts. Defendants' claim of improper joinder rests solely on their argument that Plaintiff has failed to establish a cause of action against each non-diverse defendant. (*See* Defs.' Resp. to Pl.'s Mot. Remand 4-5).

In determining whether the plaintiff has established a cause of action against the non-diverse defendant, "[i]f there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no [improper] joinder." *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). However, a reasonable basis requires more than "liability by the mere hypothetical possibility." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999). In demonstrating the lack of a reasonable basis, a defendant may employ one of two methods of proof. First, the court may conduct a Rule 12(b)(6)-type analysis to determine whether the allegations in the plaintiff's complaint state a claim under state law against the defendant. *Smallwood*, 385 F.3d at 573. Second, even when a plaintiff survives a 12(b)(6) challenge, in those cases where a plaintiff states a claim but misstates or omits discrete facts, a court may "pierce the pleadings" and consider summary judgment-type evidence. *Id.*; *McKee*, 358 F.3d at 334. Because the Court can resolve the present dispute based solely on its 12(b)(6) analysis, there is no reason to examine the second

manner of proof.³

C.   *Rule 12(b)(6) Standard*

Under the Federal Rules of Civil Procedure, a complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff may support his claim for relief with any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Rule 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In analyzing a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). Such a motion should only be granted when the complaint does not include "enough facts to state a clam to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, to survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive a motion

---

³Accordingly, the Court does not consider the Declaration of Dr. Caro that Defendants included in their Appendix in support of their Response to Plaintiff's Motion to Remand (doc. 13-1), nor Plaintiff's Declaration attached as Exhibit B to her Reply in Support of the Motion to Remand (doc. 22, 27-28).

to dismiss. *Iqbal*, 129 S. Ct. at 1949. A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadilac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## III.

## ANALYSIS

Plaintiff has pled four causes of action against the Non-Manufacturing Defendants: negligence, negligent misrepresentation, conspiracy, and fraud.[4] (Pl.'s Orig. Pet. 9-15). If Plaintiff has adequately stated any of these claims against any of the Non-Manufacturing Defendants, the Court does not have diversity jurisdiction and the case should be remanded. However, because the court determines that Plaintiff's Original Petition fails to provide sufficient factual allegations in support of her claims against these Defendants, this Court currently does have jurisdiction to hear this case, and Plaintiff's Motion to Remand is **DENIED**.

A.  *Negligence*

In Court I of her Original Petition, Plaintiff complains of a host of negligent conduct by the Non-Manufacturing Defendants,[5] alleging that they (1) negligently tested, labeled, packaged,

---

[4]While Plaintiff includes a claim of strict liability in Count II, she expressly limits that claim to the Manufacturing Defendants. (*See* Pl.'s Orig. Pet. 11).

[5]Plaintiff's allegations throughout the Original Petition's causes of actions section refers generally to "Defendants" and does not differentiate between the Manufacturing and Non-Manufacturing Defendants. Accordingly, the Court assumes that Plaintiff refers to the Non-Manufacturing Defendants in each allegation against "Defendants."

distributed, promoted, marketed, advertised, or sold Raptiva when they knew or should have known of the risk it posed to Plaintiff; (2) failed to adequately warn Plaintiff, her treating physicians, other consumers, or the health care community of the risks of Raptiva; and (3) failed to conduct sufficient testing on Raptiva.[6] (Orig. Pet. 9-11). Notably, Plaintiff expressly disclaims any negligence action against the Non-Manufacturing Defendants arising out of her "physician-patient relationship" with Dr. Menter. (*See* Pl.'s Orig. Pet. 3). Under Texas law, a cause of action for negligence requires (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately resulting from that breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). Thus, if Defendants can demonstrate that Plaintiff has failed to adequately plead any one of these elements under Rule 12(b)(6), Plaintiff's Count 1 will not be a sufficient basis for remand.

Defendants argue that because Plaintiff has foreclosed any ability to recover against Defendant Menter in his role as Plaintiff's prescribing physician, her only negligence claims against him and the other Non-Manufacturing Defendants arise out of their roles as clinical researchers. (Defs.' Resp. to Pl.'s Mot. Remand 7). Defendants further contend that as clinical researchers, the Non-Manufacturing Defendants neither owed Plaintiff a duty of care nor proximately caused the injuries she suffered. (*Id.* at 6-12). Plaintiff does not directly respond to Defendants' arguments, but instead argues that Dr. Menter filled the role of a "non-manufacturing seller" of Raptiva who can be liable for the sale of a product he knew to be defective. Because the Court finds that the non-Manufacturing Defendants did not owe Plaintiff a duty of care, there is no need to look at the issue

---

[6]Plaintiff, in passing, also asserts a claim for negligent undertaking pursuant to Sections 323 and 324A of the Restatement (Second) of Torts. (Pl.'s Orig. Pet. 11). However, Plaintiff fails to point to any factual support for this allegation. Plaintiff's negligent undertaking claims are even more conclusory than those rejected in *Staples*, discussed below. *See Staples v. Merck & Co.*, 270 F. Supp. 2d 833, 842-43 (N.D. Tex. 2003).

of causation.

No Texas court has directly addressed the question of whether a clinical researcher owes a duty of care to a patient who later uses the tested drug. However, this Court, in applying Texas law, has addressed the issue, holding that a clinical researcher owes no duty to a patient who ultimately receives the tested drug. *Staples v. Merck & Co.*, 270 F. Supp. 2d 833, 839 (N.D. Tex. 2003). In *Staples*, a group of plaintiffs brought nearly identical claims to those in the instant suit, alleging that the makers and testers of the drug VIOXX negligently failed to warn plaintiffs of the dangers of the drug, negligently misrepresented or concealed information from Plaintiffs, negligently undertook a duty to warn plaintiffs, intentionally defrauded plaintiffs, and civilly conspired to commit unlawful acts. *Id.* at 837-46. In response to the plaintiff's motion to remand, the defendants argued that the plaintiffs could not succeed on any of their claims against the non-diverse clinical researcher defendants. *Id.* at 835.

In the context of the plaintiffs' negligence claims in particular, the defendants argued that the clinical researchers did not owe the plaintiffs a duty to warn. *See id.* at 837-39. Judge Lynn found that Texas law did not impose a duty to warn on the clinical researcher defendants. *Id.* at 839. She observed that while Texas courts had never spoken directly on the issue of a clinical researcher's duty to warn, the Texas Supreme Court had recently held that a drug testing laboratory owed no duty of care to a third-party employee who was fired by her employer because of the testing lab's results. *Id.* at 838. After citing a Fifth Circuit case that reiterated that a drug testing lab owed a third-party employee no duty of care, noted that the parties in the case before her "had no real relationship other than their mutual connection to the employer" and stated that the two cases "stand for the general proposition that an independent laboratory's duties do not go beyond those

it contracted to perform." *Id.* at 839. After observing that the clinical researcher defendants had no direct ties to or contact with the plaintiffs, the Court held that the clinical researchers owed no duty to the plaintiffs and thus could not be liable to them. *Id.*

The Court finds the reasoning of *Staples* applicable in the instant case as well. Plaintiff has offered no evidence that the Non-Manufacturing Defendants had any ties to Plaintiff, other than Dr. Menter's disclaimed role as her prescribing physician. While Plaintiff does allege that Dr. Menter also represented the safety and effectiveness of Raptiva to an FDA advisory board, it is entirely unclear at this time how that allegation ties into Plaintiff's causes of action and particularly any duty Dr. Menter owed Plaintiff. Because the Court finds that the non-Manufacturing Defendants owed Plaintiff no duty to warn as clinical investigators, Plaintiff fails to state one of the essential elements for a negligence claim and thus cannot possibly recover from them on that claim.

The only way that Plaintiff may properly assert a negligence cause of action against the Non-Manufacturing Defendants, therefore, is by claiming that they played some other role other than merely being clinical investigators in Plaintiff's use of Raptiva and that they then violated a duty associated with that role. As currently constructed, however, Plaintiff's Original Petition fails to adequately do so. For one, as discussed above, Plaintiff has disclaimed any medical malpractice claim against Dr. Menter for his role as her prescribing physician. Plaintiff has also failed to adequately plead her contention that Dr. Menter is liable as a "non-manufacturing seller" of Raptiva. (*See* Pl.'s Resp. to Defs.' Obj. to Pl.'s Mot. Remand 4). Plaintiff's Original Petition does not contain a single factual allegation that Dr. Menter sold Raptiva to Plaintiff, only that he prescribed it for her. Neither does Plaintiff adequately assert a claim of negligence arising out of the Non-Manufacturing Defendants insufficient testing of Raptiva. Plaintiff alleges that "Defendants . . . failed to conduct

sufficient testing on RAPTIVA, which, if properly performed, would have shown that RAPTIVA had serious side effects. (Pl.'s Orig. Pet. 10). However, the Petition is entirely devoid of any factual allegations made in support of this contention, and accordingly does not adequately state a claim upon which relief may be granted.

Because Plaintiff's Original Petition fails to state a claim for negligence against the Non-Manufacturing Defendants for any role they filled other than as clinical researchers, and because as clinical researchers the Non-Manufacturing Defendants owed Plaintiff no duty of care, remand on that ground is improper.

### B. *Negligent Misrepresentation*

In Count III of her Original Petition, Plaintiff alleges that the Non-Manufacturing Defendants negligently misrepresented to or concealed from Plaintiff, the health care industry, and the consuming public (1) the safety and effectiveness of Raptiva; (2) the adequacy and accuracy of their testing; and (3) the results of other tests and studies. (Pl.'s Orig. Pet. 13). Pursuant to Texas law, the elements of a cause of action for negligent misrepresentation are: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Defendant argues that Plaintiff fails to adequately support her misrepresentation claim with any factual allegations as to what false or misleading statements were made, that the Non-Manufacturing Defendants did not have an affirmative duty to speak, and that Plaintiff failed to

satisfy the heightened pleading standards of FED. R. CIV. P. 9(b). Plaintiff does not directly respond to Defendants' arguments.

As an initial matter, the Court notes that Defendants' Rule 9(b) arguments, no matter how meritorious they may be, are inapposite in a remand analysis because the particular pleading requirements of the Federal Rules do not yet apply. *See Miramont Mgmt. Co. v. John Sibbald Assocs.*, No. H-08-2188, 2008 WL 4179447, at * 2 (S.D. Tex. Sept. 5, 2008). As to Defendants' other arguments, the Court once again finds *Staples* particularly insightful. In *Staples*, the Court observed that a plaintiff ordinarily cannot merely bring conclusory or speculative allegations in order to validate their negligent misrepresentation claim. *Staples*, 270 F. Supp. 2d at 840-41 (citing *Sohmer v. Am. Med. Sec., Inc.*, No. 3:02-CV-1680-K, 2002 WL 31323763, at *3 (N.D. Tex. Oct. 15, 2002)). In *Staples*, the plaintiffs failed to allege "specific facts" demonstrating misrepresentation or concealment by the clinical researcher defendants, instead merely alleging that "Defendants" made misrepresentations or omissions concerning the safety and effectiveness of VIOXX. *Id.* at 840 & n. 31. Nor did the plaintiffs assert that the clinical researcher defendants made any representation to the plaintiffs, as the two sides did not come in contact with one another.[7] *Id.* at 841. So too in the instant case, Plaintiff fails to plead anything more than conclusory and speculative allegations, without pointing to any particular statement, and without even demonstrating any contact between the Non-Manufacturing Defendants and Plaintiff, other than Dr. Menter's prescribing Raptiva to Plaintiff, which has been disclaimed by Plaintiff. Plaintiff has therefore wholly failed to point to any

---

[7]The Court in *Staples* spent a great amount of time considering the plaintiffs' allegations under Section 311(1)(b) of the Restatement (Second) of Torts. Here, Plaintiff has made no similar arguments, and the Court still finds it unnecessary to look at the summary-type affidavits offered by the parties.

particular misrepresentation or omission and, more importantly, how she "justifiably relied" on that statement.

C.   *Fraud*

In Count V of her Original Petition, Plaintiff alleges that the Non-Manufacturing Defendants committed actual fraud against her by making false statements or omitting material information from her and committed constructive fraud by breaching duties they owed her. (Pl.'s Orig. Pet. 15). In Texas, an individual may base a fraud claim on either an affirmative false representation or nondisclosure. *See Jones v. Texas Dept. of Protective and Regulatory Servs.*, 85 S.W.3d 483, 491 (Tex. App.–Austin 2002) (citation omitted) ("[fraud] may consist of both active misrepresentation and passive silence); *see also Dorsey v. Portfolio Equities Inc.*, 540 F.3d 333, 341 (5th Cir. 2008) (listing the elements of fraud based on both an affirmative false representation and nondisclosure). Plaintiff alleges that her fraud claim is based on both theories. A claim based upon an affirmative misrepresentation consists of "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W. 2d 41, 47 (Tex. 1998) (quotations omitted). The elements of a fraud claim based upon nondisclosure are: "(1) the defendant failed to disclose facts to the plaintiff; (2) the defendant had a duty to disclose those facts; (3) the facts were material; (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (5) the defendant was deliberately silent when it had a duty to speak; (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (7) the plaintiff relied on the defendant's nondisclosure; and (8) the

plaintiff was injured as a result of acting without that knowledge. *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 508 n. 27 (Tex. App.–Houston [14th Dist.] 2007) (gathering the elements from several other Texas cases).

Defendants' arguments concerning Plaintiff's fraud claims are the same as their arguments about Plaintiff's negligent misrepresentation claims. (*See* Defs.' Resp. tp Pl.'s Mot. Remand 12-14). Once again, Plaintiff has failed to respond to these arguments. Because both affirmative and constructive fraud also rely upon a misrepresentation or omission and the damaged party's reliance, Plaintiff's fraud claims fail under the same reasoning as her negligent misrepresentation claims.

D. *Conspiracy*

Plaintiff alleges that the Non-Manufacturing Defendants are liable for civil conspiracy because of their intentional tortious conduct. (Pl.'s Orig. Pet. 15). Under Texas law, a plaintiff must establish the following elements to prove a cause of action for civil conspiracy: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Apani Sw., Inc. v. Coca-Cola Enters.*, 300 F.3d 620, 635 (5th Cir. 2002) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). Liability for conspiracy depends on participation in an underlying tort. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996); *see Staples*, 270 F. Supp. 2d at 845. Because Plaintiff has failed to adequately allege any underlying tort, her conspiracy claim necessarily fails as a matter of law.

IV.

## CONCLUSION

Because Plaintiff's Original Petition fails to state any claim upon which she might possibly recover against the non-diverse Non-Manufacturing Defendants, her Motion to Remand is hereby **DENIED**. Defendants' Unopposed Motion for Leave to File Sur-Reply is hereby **DENIED as moot**. The Court will enter a separate Order dealing with Plaintiff's Motion for Leave to File Amended Complaint (doc. 21) and the Non-Manufacturing Defendants' Motion to Dismiss (doc. 9).

**SO ORDERED.**

**DATED January 12, 2011**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE