# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

MABEL CLAIRE MCCALL,       §
           §
      Plaintiff,            §
           §
v.                   §       CIVIL ACTION NO. 3:10-CV-1747-B
           §
GENENTECH, INC., et al.,       §
           §
      Defendants.        §

## MEMORANDUM OPINION AND ORDER

Before the Court is the Non-Manufacturing Defendants' Joint Motion to Dismiss Plaintiff's Amended Complaint (doc. 36), filed January 25, 2011. For the reasons stated below, the Court finds the Motion should be and hereby is **GRANTED**.

## I.

## BACKGROUND

As previously discussed, this action arises out of Plaintiff Mabel Claire McCall's use of the prescription drug Raptiva to treat her plaque psoriasis between September 2006 and August 2008. (Pl.'s Am. Compl. 5; *see* Mem. Op. & Order 1, Jan. 12, 2011). Plaintiff alleges that Defendant Dr. Alan Menter originally prescribed Raptiva for her in September 2006 (Pl.'s Am. Compl. at 2, 5). After self-injecting the drug weekly for twenty-three months, Plaintiff began to experience headaches, fever, chills, low back pain, nausea, and vomiting. (*Id.* at 2, 5-6). Plaintiff presented herself at a local emergency room on August 8, 2008, where she was eventually diagnosed as having encephalitis. (*Id.* at 6). While in the hospital, Plaintiff was subjected to several invasive medical

procedures, including multiple spinal taps and a tracheostomy. (*Id.* at 6). She remained in the hospital for twenty-five days. (*Id.*). To this day, Plaintiff maintains that she suffers from cognitive and communication issues, short term memory loss, tremors, fatigue, anxiety, depression, pain, and sleep apnea. (*Id.* at 7). Plaintiff also must wear bilateral leg braces and walk with a cane, as she is prone to fall without them. (*Id.*).

Defendant Genentech was the primary designer, manufacturer, tester, and supplier of Raptiva. (*Id.* at 1). Defendant XOMA aided in the research, development, and testing of Raptiva. (*Id.* at 2). Together, Defendants Genentech and XOMA are hereinafter referred to as the Manufacturing Defendants. The three other defendants are hereinafter labeled the Non-Manufacturing Defendants. The first Non-Manufacturing Defendant, Dr. Alan Menter, was a clinical researcher of Raptiva who conducted clinical trials of the drug prior to its approval by the Food and Drug Administration ("FDA"). (*Id.* at 8). Dr. Menter was also allegedly involved in the approval and promotion of Raptiva, claims that were generally added in Plaintiff's Amended Complaint and that are specifically delineated below. (*See id.* at 8-10). Important to the case at bar, although Dr. Menter initially prescribed Raptiva for Plaintiff, her Amended Complaint expressly disclaims any cause of action based upon Dr. Menter's role as a treating physician. (*Id.* at 3, 5 ("This is not an action related to 'health care' or a physician-patient relationship pursuant to [TEX. CIV. PRAC. & REM. CODE §] 74.001 et seq., Texas Medical Liability and Improvement Act.")).

Dr. Menter practiced out of Defendant Texas Dermatology Associates and was also the Director of Psoriasis Research at Defendant Baylor Research Institute. (*Id.* at 2). These two business entities also conducted studies of Raptiva and provided sub-investigators for the research. (*Id.* at 8). Plaintiff alleges that the studies of the Non-Manufacturing Defendants were "integral"

to the launch of Raptiva. (*Id.*).

Plaintiff filed her Original Petition in state court on August 4, 2010 (doc. 1, 22-38), bringing claims of negligence, strict liability, negligent misrepresentation, fraud, and civil conspiracy. Defendants Genentech and XOMA answered on August 30, 2010 (doc. 1, 44-60). Genentech and XOMA (with the Non-Manufacturing Defendants' consent) subsequently removed the case on the basis of diversity jurisdiction to this Court on September 3, 2010 (doc. 1), alleging that though the Non-Manufacturing Defendants were not diverse in citizenship from Plaintiff, they had been improperly joined to the lawsuit. (Notice of Removal 3-8). Soon thereafter, the Non-Manufacturing Defendants filed their first Motion to Dismiss (doc. 9), contending that Plaintiff had failed to state any claims against them upon which she could possibly obtain relief. Plaintiff disagreed, filing a Motion to Remand (doc. 11), wherein she argued that she had in fact properly asserted causes of action against the non-diverse, Non-Manufacturing Defendants. The Court found that Plaintiff's Original Petition (the operative pleading at the time of removal) failed to adequately assert a cause of action against any of the Non-Manufacturing Defendants and accordingly denied Plaintiff's Motion to Remand (doc. 29).

While Plaintiff's Motion to Remand and the Non-Manufacturing Defendants' first Motion to Dismiss were still pending, Plaintiff sought (doc. 21) and the Court granted (doc. 31), leave to amend her Original Petition. The Clerk then entered Plaintiff's Amended Complaint (doc. 33), which contains several additional factual allegations related to the Motion to Dismiss. Because the Non-Manufacturing Defendants' Motion to Dismiss centered only on the allegations in the Plaintiff's Original Petition—no longer the operative pleading—the Court denied their Motion to Dismiss but gave them permission to refile a similar motion in response to the Amended Complaint and its

additional factual allegations (doc. 32).

Plaintiff's Amended Complaint supplements her claims against the Non-Manufacturing Defendants, providing additional factual details concerning Dr. Menter's involvement in the approval and promotion of the drug. In addition to realleging that Dr. Menter was a clinical researcher for Raptiva and that he advocated the safety and effectiveness of the drug before an FDA Advisory Committee Meeting determining whether to approve it, Plaintiff also now claims that (1) Dr. Menter advocated the safety and effectiveness of Raptiva at certain American Academy of Dermatology meetings as well, (2) participated in videos distributed to physicians and psoriasis patients in which he reassured them of the safety and efficacy of Raptiva, and (3)advised Genentech on the clinical direction of Raptiva while serving as a member on the Genentech Raptiva National Advisory Board. (Pl.'s Am. Compl. 8-10).

After the Clerk entered Plaintiff's Amended Complaint, all five defendants followed with Motions to Dismiss Plaintiff's Amended Complaint.[1] The Non-Manufacturing Defendants filed their Motion to Dismiss Plaintiff's Amended Complaint (doc. 36) on January 25, 2011, arguing that the additional allegations raised in Plaintiff's Amended Complaint still do not state a claim upon which relief might be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff responded (doc. 42) on February 15, 2011, maintaining she had in fact adequately pled claims as to each of the Non-Manufacturing Defendants. The Non-Manufacturing Defendants filed their Reply (doc. 45) on March 1, 2011, and their Motion is now ripe for the Court's consideration.

---

[1]The Manufacturing Defendants' Joint Motion to Dismiss (doc. 34) is dealt with in a separate order.

# II.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff may support his claim for relief with any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Rule 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In analyzing a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). Such a motion should only be granted when the complaint does not include "enough facts to state a clam to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, to survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949. A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). The Court's review is limited to the allegations in the complaint and to those documents attached to a

defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadilac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

# III.

# ANALYSIS

As mentioned above, Plaintiff asserts four causes of action against the Non-Manufacturing Defendants: negligence, negligent misrepresentation, fraud, and conspiracy. (Pl.'s Am. Compl. 11-17).[2] The Court examines each of these claims in turn, ascertaining whether Plaintiff has adequately stated a claim upon which relief might be granted. Because the Court finds that Plaintiff has failed to adequately plead any claim against any of the Non-Manufacturing Defendants, the Motion to Dismiss is **GRANTED**, Plaintiff's claims are **DISMISSED**, and the Court retains its diversity jurisdiction over the remaining disputes with the Manufacturing Defendants in this case.

A.      *Plaintiff's Negligence Claims*

In Count I of her Amended Complaint, Plaintiff again generally brings three negligence theories of liability against the Non-Manufacturing Defendants:[3] (1) negligently testing, labeling, packaging, distributing, promoting, marketing, advertising, or selling Raptiva when they knew or should have known of the risk it posed to Plaintiff; (2) failing to adequately warn Plaintiff, her treating physicians, other consumers, or the health care community of the risks of Raptiva; and (3)

---

[2]Plaintiff does not include the Non-Manufacturing Defendants in her strict liability claims (Count II). (Pl.'s Am. Compl. 13-14).

[3]Plaintiff's allegations throughout the Amended Complaint's causes of actions section, like in her Original Petition, refer generally to "Defendants" and do not differentiate between the Manufacturing and Non-Manufacturing Defendants. Accordingly, the Court assumes that Plaintiff refers to the Non-Manufacturing Defendants in each allegation against "Defendants."

failing to conduct sufficient testing on Raptiva.[4] (Pl.'s Am. Compl. 11-13). Plaintiff once again also expressly disclaims any negligence action against the Non-Manufacturing Defendants arising out of her "physician-patient relationship" with Dr. Menter. (*See id.* at 3). To succeed on a claim of negligence under Texas law, a plaintiff must demonstrate (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately resulting from that breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).

In its January 12, 2011 Memorandum Opinion & Order, the Court, looking only at whether the Non-Manufacturing Defendants owed Plaintiff a legal duty, found that Plaintiff had failed to plead a claim upon which relief could be granted as to any of the three negligence theories. (Mem. Op. & Order 7-11). More specifically, the Court found that the Non-Manufacturing Defendants were not "non-manufacturing sellers" of Raptiva (and thus were not "sellers or manufacturers" for products liability purposes), nor could they be liable for failing to conduct sufficient testing. (*Id.* at 10-11). Plaintiff's Amended Complaint does not change the Court's opinion with respect to the sufficiency of those two claims, and accordingly any claim based on those two negligence theories are **DISMISSED**.[5]

The bulk of the Court's January 12th Order dealt with Plaintiff's failure to warn claims. (*See id.* 9-10). With respect to those claims, the Court held that Plaintiff could not bring suit against the non-Manufacturing Defendants for actions taken in their roles as clinical researchers. (*Id.* (citing

---

[4]Plaintiff, again in passing, reasserts a claim for negligent undertaking pursuant to Sections 323 and 324A of the Restatement (Second) of Torts. (Pl.'s Am. Compl. 12). However, she still fails to point to any factual support for this allegation and they are accordingly **DISMISSED**. (*See* Mem. Op. & Order 8 n.6, Jan. 12, 2011).

[5]Contrary to Plaintiff's continued assertions to the contrary (*see* Pl.'s Resp. 7-8), a physician who merely prescribes a drug is not a non-manufacturing seller of that drug under Texas law.

*Staples v. Merck & Co.*, 270 F. Supp. 2d 833, 839 (N.D. Tex. 2003)). Thus, the "only way" Plaintiff's claims could survive dismissal, the Court reasoned, would be if they implicated some other duty or provided additional factual detail. (*Id.*).

The Court finds (and the parties seemingly agree) that the only major difference between Plaintiff's Original Petition and Amended Complaint is the inclusion of several additional factual allegations relating to Dr. Menter. Indeed, Plaintiff even concedes in her Response to the Motion to Dismiss that her only negligence claim against Defendants Texas Dermatology and Baylor Research is for their "conduct[ing] studies and provid[ing] sub-investigators of Raptica in Dallas County, Texas." (Pl.'s Resp. 7). Because Plaintiff has thus failed to allege any claim against those two defendants other than for their role as clinical researchers, her claims against them are **DISMISSED**. *See Staples*, 270 F. Supp. 2d at 838-39.

As to her failure to warn claims against Dr. Menter, the Court finds that Plaintiff still fails to adequately state a claim for negligence upon which relief might be granted. In addition to her allegations concerning Dr. Menter's role as a clinical researcher, Plaintiff also alleges that he advocated the safety and effectiveness of Raptiva before both an FDA Advisory Committee Meeting determining whether to approve it and certain American Academy of Dermatology meetings, participated in videos distributed to physicians and psoriasis patients in which he reassured them of the safety and efficacy of Raptiva, and advised Genentech on the clinical direction of Raptiva while serving as a member on the Genentech Raptiva National Advisory Board. (Pl.'s Am. Compl. 8-10). The Non-Manufacturing Defendants once again move to dismiss Plaintiff's negligence claims, contending that her allegations still fail to implicate a cognizable duty under Texas law. (*See* Defs.' Br. in Supp. of Mot. Dismiss 5-10). Plaintiff generally responds that this "abundance of factual

allegations . . . demonstrate[s] that the Non-Manufacturing Defendants owe the Plaintiff a duty of care and that Defendant suffered serious injuries in part because this duty was violated. (Pl.'s Resp. 7 (citing Pl.'s Am. Compl. 12)).

The Court finds that Plaintiff's additional factual allegations do not elevate her claims from inadequacy to sufficiency. Instead, these allegations once again concern actions and events for which there is no cognizable duty under Texas law. Both state and federal courts applying Texas law admonish against the judicial creation of legal duties. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Bren-Tex Tractor Co. v. Massey-Ferguson, Inc.*, 97 S.W.3d 155, 161 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Plaintiff has failed to point the Court to a single case indicating that any of her extra-clinical-researcher assertions implicate any legal duty previously announced under Texas tort law. (*See* Pl.'s Resp. 7). This, after the Court noted its concern that such duties might not exist on two separate occasions in previous orders. (*See* Mem. Op. & Order 10-11, Jan. 12, 2011 (doc. 29); Order 1-2, Jan. 12, 2011 (doc. 31)). Accordingly, Defendants' Motion to Dismiss as to Plaintiff's negligence claims is **GRANTED**, and those claims are **DISMISSED**.

B. *Plaintiff's Other Tort Claims*

Plaintiff also realleges her claims for negligent misrepresentation, fraud, and civil conspiracy in her Amended Complaint. (Pl.'s Am. Compl. 14-17). In its January 12th Memorandum Opinion and Order, the Court found that Plaintiff failed to adequately plead her negligent misrepresentation and fraud claims, despite the fact that the Court could not consider the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. (Mem. Op. & Order 11-14). As stated above, the only material changes in Plaintiff's Amended Complaint are the additional factual

allegations concerning Dr. Menter's involvement in the approval and promotion of Raptiva. She has not changed her factual allegations with respect to her negligent misrepresentation or fraud claims in her Amended Complaint. This, when coupled with the fact that Rule 9(b)'s heightened pleading standard applies, leads the Court to unequivocally find that Plaintiff has once again failed to state a claim for negligent misrepresentation or fraud, Defendants' Motion to Dismiss as to those claims should be **GRANTED**, and the claims **DISMISSED**.

Plaintiff's conspiracy claims likewise fail once again as well. As previously noted, liability for conspiracy depends on participation in an underlying tort. (Mem. Op. & Order 14 (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)). Because Plaintiff's negligent misrepresentation and fraud claims have failed once again, so too her conspiracy claims fall short, Defendants' Motion to Dismiss is **GRANTED**, and those claims are **DISMISSED**.

## IV.

## CONCLUSION

The Non-Manufacturing Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) is hereby **GRANTED**. Accordingly, Plaintiff's claims are **DISMISSED without prejudice**.

The Court does not take lightly dismissal of a claim without reaching its merits. Thus, a plaintiff will be given the opportunity to amend a complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (noting that a court may dismiss a claim for failing to comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (observing that a complaint

should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted.") (citation omitted).

   While Plaintiff has already twice attempted to adequately plead her claims against the Non-Manufacturing Defendants, out of an abundance of caution the Court finds she should be afforded a final opportunity to present a Motion for Leave to Amend. If Plaintiff chooses to file a Motion for Leave, she must do so **on or before Friday, June 24, 2011**. Further, Plaintiff's Motion shall be no more than ten pages in length and shall lay out precisely how any changes cure the deficiencies cited in the Court's Orders. In accordance with the Local Rules, Plaintiff should also attach her Proposed Second Amended Complaint to the Motion for Leave. Should Plaintiff file a Motion for Leave, Defendants are directed to file a Response within ten calendar days of the Motion.

   Plaintiff may file **only one** Motion for Leave to Amend—such motion may address her dismissed claims against the Manufacturing Defendants, the Non-Manufacturing Defendants (including her negligence claims), or both, but all arguments must be addressed in the single motion. No further briefing will be permitted. Failure to file a Motion for Leave to Amend will result in dismissal **with prejudice** of Counts III-V against the Manufacturing Defendants and Counts I-V against the Non-Manufacturing Defendants.

   **SO ORDERED.**

   **DATED June 9, 2011**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE